OPINION
{¶ 1} Appellant Richard Cochran appeals a judgment of the Coshocton County Common Pleas Court convicting him of three counts of gross sexual imposition:
 {¶ 2} "Appellant's convictions were based on insufficient evidence, and the trial court erred in overruling defendant-appellant's motion for acquittal pursuant to Rule 29 of the Ohio rules of criminal procedure.
 {¶ 3} "Appellant's convictions were against the manifest weight of the evidence.
 {¶ 4} "The trial court erred to the prejudice of the appellant by improperly denying his motion to suppress evidence.
 {¶ 5} "The trial court erred to the prejudice of the appellant by improperly denying his motion for mistrial and/or motion for new trial due to the improper statements made by the state regarding the appellant's failure to testify.
 {¶ 6} "The trial court erred to the prejudice of the appellant by improperly allowing hearsay evidence and/or improper impeachment to be presented by the state."
 {¶ 7} Shawna Cochran is appellant's granddaughter. Shawna visited her grandparents about once a month. During the year 2001, when Shawna was eleven years old, she stayed with her grandparents the first weekend in February, as her mother and stepfather went to Canada to get laser treatment to stop smoking. She stayed with her grandparents on Memorial Day weekend, and again in August for a party her great aunt had in her garage. She also stayed with her grandparents in November of 2001. When Shawna stayed with her grandparents, she played putt-putt golf on the computer with appellant. While sitting at the computer playing the game, appellant touched Shawna's breasts under her clothing, and rubbed her genital area through her clothing. He told her not to tell anyone, because they would be taken away from each other because they loved each other so much.
 {¶ 8} In April of 2002, Shawna told her mother about the incidents involving her grandfather. Detective Timothy Bethel, of the Coshocton County Sheriff's Department called appellant, asking him to come to the sheriff's department to speak with the detective regarding his granddaughter, his ex-daughter-in-law, and his daughter-in-law's new husband During the interview with Detective Bethel, appellant admitted that he had touched Shawna on her breasts and genital area, and he had French kissed Shawna.
 {¶ 9} Appellant was indicted for four counts of gross sexual imposition in violation of R.C. 2907.05 (A)(4). The case proceeded to jury trial in the Coshocton County Common Pleas Court. Following trial, he was found not guilty of count four, involving the incident occurring in August of 2001. He was convicted on the three remaining charges. The court sentenced appellant to two years incarceration on each count, to be served concurrently.
 I II {¶ 10} In his first two assignments of error, appellant argues that judgment is against the manifest weight and sufficiency of the evidence. Appellant makes the same argument concerning both claims, and thus we address the first two assignments of error together.
 {¶ 11} The legal concepts of sufficiency of the evidence and weight of the evidence are different. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. Whether the evidence is sufficient to sustain a verdict is a question of law. Id. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other. Id. at 387. In considering a claim that a judgment is against the manifest weight of the evidence, the court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. Id. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id.
 {¶ 12} Shawna Cochran testified that when she would play a golf game on the computer with her grandfather, appellant would touch her breasts under her shirt, and her genital area on top of her clothing. In statements made to the police, appellant admitted that this touching occurred. This evidence is sufficient, if believed by the jury, to support the verdict.
 {¶ 13} Appellant argues that Shawna's testimony is not credible because the evidence demonstrated that while the touching was going on near the computer, appellant's wife was usually watching television on the couch, which is a matter of feet away from the computer down an open corridor. Appellant also argues that Shawna did not report the incidents to her mother until April of 2002, following a conversation with her mother regarding her mother and step-father going on vacation without her. Appellant also argues that his wife testified that the computer did not have any games on it in November of 2001, and therefore it was not possible for Shawna to have been playing the games in November of 2001.
 {¶ 14} However, while appellant's wife was frequently in the living room while they were playing on the computer in a nearby area, Shawna testified that you could not see the computer from the couch because the television was in the way, and appellant's wife admitted that she did not directly watch Shawna and her grandfather the entire time. Therefore, the touching could have occurred without Shawna's grandmother noticing.
 {¶ 15} Appellant also argues that there is no evidence to demonstrate that he committed the sexual contact for purposes of sexual arousal or gratification. Whether touching is done for the purpose of sexual gratification is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact. E.g., State v. Mundy
(1994), 99 Ohio App.3d 275, 289. In the instant case, Shawna's testified that her grandfather touched her breast underneath her clothing, and touched her genital area on top of her clothing. She testified that appellant told her not to tell anyone about the contact, because they would take them away from each other because they loved each other so much. Further, in the interview with police, appellant stated that conduct of this type is an act of love between people, that partners do with each other, such as after marriage, to make them feel good, and that people do these things sometimes to themselves to make themselves feel good. While appellant also stated during the interrogation that any touching that occurred was not sexual in nature, the finding that the touching occurred for purposes of sexual gratification is not supported by insufficient evidence, nor is it against the manifest weight of the evidence.
 {¶ 16} Appellant's first and second assignments of error are overruled.
 III {¶ 17} In his third assignment of error, appellant argues that the court erred in overruling his motion to suppress. Appellant argues that the interrogation at the police station was a custodial interrogation, and he was not given his Miranda warnings before he was questioned.
 {¶ 18} The court did not err in concluding that under the totality of the circumstances, appellant was not in custody during the questioning. Appellant voluntarily appeared at the police station after the detective called to ask whether he would be willing to come and speak to him regarding allegations made by his granddaughter. The interview took place in a room which could not be accessed without first unlocking the door. However, there is no evidence that the door to the office could not be opened from the inside without a key. Given the delicate nature of the subject matter, conducting the interview in a private room is not necessarily indicative of a custodial interrogation. Further, appellant was not arrested at the conclusion of the interview, and was allowed to freely leave the police station.
 {¶ 19} The third assignment of error is overruled.
 IV {¶ 20} In his fourth assignment of error, appellant argues that the court erred in overruling his motion for mistrial and his motion for a new trial based on improper comments of the State concerning his failure to testify.
 {¶ 21} Early in closing argument, the prosecutor made the following statement to the jury:
 {¶ 22} "There were, in essence, two people who were present during these acts; that's Shawna Cochran and the defendant, Richard Cochran. You have heard from one witness testifying about what happened during those particular incidents. That's the evidence that you have before you as to whether or not these acts have occurred. One person who was directly there testifying . . ." Tr. Volume II, 183.
 {¶ 23} At this point, counsel for appellant asked to approach the bench. After a side-bar conference out of the hearing of the jury, the jury was removed from the courtroom and sequestered. Counsel for appellant then moved for a mistrial, arguing that the statement was a direct comment on appellant's failure to testify. The court overruled the motion for mistrial, the jury was returned to the courtroom, and closing arguments were concluded.
 {¶ 24} The State's comment was not so egregious as to require a mistrial or a new trial. The State's comment that only two people were present during the acts was factually accurate, as the grandmother was not in the room when the incidents occurred. While the prosecutor did state that they had heard from only one witness concerning the incidents, the court instructed the jury that it is not necessary that the defendant take the witness stand, that he has constitutional right not to testify, and that the fact that he did not testify must not be considered by the jury for any purpose. The court gave this instruction upon the request of counsel for appellant.
 {¶ 25} Given the limited nature of the comment, and the curative instruction given by the court, appellant has not demonstrated that the court should have granted a mistrial or a new trial.
 {¶ 26} The fourth assignment of error is overruled.
 V {¶ 27} Appellant argues that the court improperly allowed hearsay evidence or improper impeachment to be presented by the State during the cross-examination of his wife. He argues that after Nancy Cochran testified that he had never heard the taped interrogation of her husband, but had seen a transcript, the transcript was used for cross-examination, but was never admitted or accepted into evidence at trial.
 {¶ 28} Nancy Cochran testified that she did not believe any of the events concerning Shawna had occurred. She testified that she had never heard the tape, but when asked if she had any idea what was on the taped statement, she testified that she had read the statement, but did not hear it. She then admitted on cross-examination she was aware appellant had told police he had touched Shawna's breasts and genital area, and had French kissed her, but that she still did not believe he had done these things.
 {¶ 29} The court did not err in overruling the objection to the use of the transcript to cross-examine Nancy Cochran. The tape of the interview had already been admitted into evidence, and Mrs. Cochran specifically testified that she had read the statement of what was on the tape, but did not believe it. There is nothing in the record to demonstrate that the questions asked of her concerning her knowledge of the contents of the statement in any way conflicted with what was on the tape. The cross-examination was a proper line of inquiry considering Nancy Cochran's credibility, as she initially indicated that she did not know what her husband had said to the police, yet later admitted that she had read the statement but did not believe it was true.
 {¶ 30} The fifth assignment of error is overruled.
 {¶ 31} The judgment of the Coshocton County Court of Common Pleas is affirmed.
Wise, J., and Boggins, J., concur.