[Cite as *State v. Davis*, 2024-Ohio-1504.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                      |
|--------------------------|---|------------------------------|
| STATE OF OHIO            | : | Hon. W. Scott Gwin, P.J.     |
|                          | : | Hon. John W. Wise, J.        |
| Plaintiff-Appellee       | : | Hon. Craig R. Baldwin, J.    |
|                          | : |                              |
| -vs-                     | : |                              |
|                          | : | Case No. 23 CAA 10 0091      |
| RAYMOND DAVIS            | : |                              |
|                          | : |                              |
| Defendant-Appellant      | : | OPINION                      |

CHARACTER OF PROCEEDING:     Appeal from the Delaware Court of
                             Common Pleas, Case No. CRI09 0536

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      April 19, 2024

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MELISSA A. SCHIFFEL                       CHRISTOPHER BAZELEY
By: KATHERYN L. MUNGER                    9200 Montgomery Road, Suite 8A
Assistant Prosecutor                      Cincinnati, OH 45242
145 North Union Street, 3rd Floor
Delaware, OH 43015

*Gwin, P.J.*

{¶1}  Defendant-appellant Raymond P. Davis ["Davis"] appeals his convictions and sentences after a jury trial in the Delaware County Court of Common Pleas.

*Facts and Procedural History*

**The Indictment**

{¶2}  On September 29, 2022, Raymond Davis was indicted on two counts of Gross Sexual Imposition of a victim under the age of thirteen in violation of R.C. 2907.05, felonies of the third degree; and two counts of Gross Sexual Imposition by force in violation of R.C. 2907.05, felonies of the fourth degree. Count One alleged the conduct occurred between January 1, 2020 and March 31, 2020. Count Two alleged the conduct occurred between April 1, 2020 and August 31, 2020. Count Three alleged the conduct occurred between August 6, 2021 and September 30, 2021. Count Four alleged the conduct occurred between October 1, 2021 and October 31, 2021.

**The Jury Trial**

{¶3}  J.A.-M. testified that B.A. was the daughter of her sister, S.D. 1T. at 149.[1] S.D. is married to Davis. Id. 153. B.A. would visit her aunt and uncle at their home on a regular basis, including on occasion staying overnight. Id. Davis and B.A. had a normal uncle -niece relationship. Id. at 154. However, around December, 2021, J.A.-M. noticed that B. A. began indicating that she hated Davis and began to become withdrawn, reclusive and prone to panic attacks. 1T. at 154. J. A.-M. reviewed B.A.'s social media account and discovered a troubling post. Id. at 155. When she confronted her daughter

---

[1] For clarity, the transcript of Daniels' jury trial will be referred to as "__T.__" signifying the volume and page number.

about the meaning of the post, B.A. started yelling that she hates Davis. B.A. told her mother that Davis made her feel uncomfortable and would touch her in ways that made her uncomfortable. Id. at 156. J. A.-M. did not report the events to the police because she did not believe there was enough to file a police report. Id. at 157. When her husband found out what B.A. was alleging, he went to Davis's home on January 7, 2022 and assaulted him. 1T. at 163-164; 175.

{¶4}    On January 9, 2022, the minor, B.A., and her mother, J. A.-M., reported to the Delaware County Sherriff's Office that B.A. (b. Aug. 6, 2008) was sexually abused by Davis, her uncle, at his home in Delaware County, Ohio. J. A.-M.'s husband was arrested and charged with assaulting Davis on January 10, 2022. 1T. at 175.

{¶5}    Detective Joseph Jenkins of the Delaware County Sheriff's office testified he was contacted on January 9, 2022 about the allegations; however, because the events happened more that 72-hours before, he would follow-up with J. A.-M. the following Monday. 1T at 217; 223. During his telephone conversation with J. A.-M. Detective Jenkins told her to take B.A. to Nationwide Children's Hospital to have a forensic interview completed. Id. at 217. That interview, Detective Jenkins learned was scheduled for January 14, 2022. Id. at 218. Detective Jenkins observed the interview and was permitted to request the interviewer ask certain questions of B.A. Id. at 219; 223-224. Detective Jenkins did not speak to B.A. before the interview at the hospital. Id. at 223.

{¶6}    Rachel Raphael, an emergency department social worker, medical forensic interviewer and mental health advocate at Nationwide Children's Hospital met with B.A. on January 14, 2022. 2T. at 278; 283; 301. This interview was recorded and after

redactions was played for the jury and admitted into evidence as State's Exhibit's C1 - C4. 2T. at 304-306.

{¶7} Carrie Nease, a nurse practioner at Nationwide Children's Hospital testified that after 96 hours from the time of the abuse a prophylaxis for sexually transmitted disease or pregnancy is "not going to be needed or effective." 2T. at 334. Testing for sexually transmitted disease will only be done if appropriate based on the disclosures from the individual. Id. If the touching was alleged to have been on top of the clothing, the risk of infection is not there. Id. at 333. HIV prophylaxis would not be appropriate on a patient who discloses only touching over the clothing because there is no risk of HIV infection in that situation. 2T. at 336. Further, beyond a certain time frame after the abuse is alleged to have occurred, a sexual assault rape kit will not yield any evidence of sexual abuse. 2T. at 336-337. Nurse Nease testified that B.A. declined an anogenital exam of her vaginal area, anus, and buttocks. 2T. at 346-347.

{¶8} Davis and his wife each testified and denied all allegations. Each testified that the incidents were simply horseplay or normal family displays of affection. Davis testified that the skating rink which is the location where B.A. testified the incidents forming the basis for Count Three of the indictment occurred, is located outside of Delaware County in Marion, Ohio. 2T. at 415.

### The Verdict and Sentence

{¶9} The jury found Davis guilty of Counts One, Two and Four. The jury found Davis not guilty of Count Three.

{¶10} On September 19, 2023, the trial judge sentenced Davis to terms of incarceration of thirty months on Count One, thirty months on Count Two, and eighteen

months on Count Four. The sentences were ordered to be served consecutively. Davis was further classified as a Tier II sex offender.

*Assignments of Error*

**{¶11}** Davis raises three Assignments of Error,

**{¶12}** "I. THE TRIAL COURT ERRED WHEN IT OVERRULED DAVIS' OBJECTION TO PUBLISHING THE VIDEO TO THE JURY.

**{¶13}** "II. DAVIS' CONVICTION ON COUNT FOUR OF THE INDICTMENT IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

**{¶14}** "III. DAVIS' CONVICTIONS ARE AGAINST THE WEIGHT OF THE EVIDENCE."

I.

**{¶15}** In his First Assignment of Error, Davis argues that the trial judge violated Davis's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution when the judge ordered that the redacted portions of B.A.'s interview at Nationwide Children's Hospital could be admitted into evidence and viewed by the jury.

**{¶16}** Davis contends that because B.A. testified that she had no contact with Davis after September 2021, her statements during the forensic interview related to Count Four of the Indictment relating an incident that occurred in October 2021 violated his right to confrontation.

*The Date the Abuse was Alleged to Have Occurred*

**{¶17}** Specificity as to the time and date of an offense is not required in an indictment. Under R.C. 2941.03, "an indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the

time of filing of the indictment * * *." An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The state is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment. *State v. Adams,* 5th Dist. No. 02-CA-00043, 2002-Ohio-5953, ¶ 8.

{¶18} If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not *"per se* impermissible or necessarily fatal to a prosecution." *State v. Robinette*, 5th Dist. No. CA-652, 1987 WL 7153(Feb 27, 1987). The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability fairly to defend himself. *State v. Sellards,* 17 Ohio St.3d 169, 478 N.E.2d 781(1985); *State v. Gingell*, 7 Ohio App.3d 364, 368, 455 N.E.2d 1066, 1071(1st Dist. 1982); *State v. Kinney*, 35 Ohio App.3d 84, 519 N.E.2d 1386(1987).

{¶19} As this court has noted: "[t]ime is neither essential nor an element of the crime of sexual battery." *State v. Robinette, supra.* In *Robinette,* this court stated,

> We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. *State v. Humfleet* (Sept. 9, 1985), Clermont App. No. CA84-04-031, unreported, at 15. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness

and inexactitude must be made for such cases considering the circumstances.

{¶20} In *State v. Sellards*, the Supreme Court gave two examples of when the failure to provide specific dates and times could be prejudicial to the accused. The court first noted that if the age of the victim were an element of the crime with which the accused had been charged and the victim bordered on the age required to make the conduct criminal, then the failure to provide a more specific time frame would be prejudicial. This is true because "specific dates of sexual conduct might well have become critical to the accused's ability to prepare a defense, since sexual conduct toward one thirteen years of age or older would not constitute the offense of rape as defined in the charged section of the criminal code, R.C. 2907.02(A)(3)." *Sellards,* 17 Ohio St.3d at 172, 478 N.E.2d at 785. The second situation is where "the defendant had been imprisoned or was indisputably elsewhere during part but not all of the intervals of time set out in the indictment. Again, under such circumstances, the inability of the state to produce a greater degree of specificity would unquestionably prejudice the defense." Id. The *Sellards* court noted,

> The record in this case does not indicate that the failure to provide the accused with a specific date was a material detriment to the preparation of his defense. In this regard, we note that while appellee claims on appeal that the inexactitude of the indictment and bill of particulars as to date denied him the ability to present an alibi defense, appellee never filed a notice of intent to rely on an alibi as is required by Crim.R. 12.1. (Cf. *State v. Dingus* [1970], 26 Ohio App.2d 131, 137, 269 N.E.2d 923 [55 O.O.2d 280]; *Gingell, supra,* at 368, 455 N.E.2d 1066.)

17 Ohio St.3d 169, 478 N.E.2d 781(1985).

{¶21}  In the case at bar, Davis was fully aware the time during which the crimes were alleged to have occurred. Further he was provided copies of the forensic interview with B.A. prior to trial. Davis did not file a notice of alibi for any of the period set forth in the original indictment.

{¶22}  Upon review of State's Exhibit C4 we find that B.A. told the examiner that she was unsure whether the events that form the basis of Count Four of the indictment occurred at the end of September or beginning of October, 2021. The inexactitude of temporal information during B.A.'s testimony at trial did not truly prejudice Davis's ability fairly to defend himself. We find that Davis was adequately apprised of the crimes against him and the time period involved. He did not rely upon alibi as a defense at trial. Accordingly, Davis was not denied a fair trial by inclusion of the events set forth in Count Four of the Indictment on that basis.

{¶23}  However, Davis further contends that because she did not testify to the facts underlying the events occurring in October 2021 during her testimony at trial, his right to confrontation was violated by the admission of her statements concerning the October incident made during the forensic interview.

*The Confrontation Clause.*

{¶24}  The Sixth Amendment to the United States Constitution protects the right of a criminal defendant "to be confronted with the witnesses against him." The "primary object" of this provision is to prevent unchallenged testimony from being used to convict an accused—a safeguard that applies to both federal and state prosecutions. *Mattox v. United States*, 156 U.S. 237, 242, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *Crawford v.*

*Washington*, 541 U.S. 36, 42, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The provision encompasses the rights to have a witness physically appear in the courtroom, to require the witness to testify under oath, and to force the witness to be subject to cross-examination. *See Maryland v. Craig*, 497 U.S. 836, 845-846, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

{¶25} In *State v. Perez,* the appellant was convicted of aggravated murder with two death penalty specifications. 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶54. During his trial, taped conversations between Perez and his wife Debra were played during the testimony of the investigating detective. Debra testified after the detective, but the tapes were not played during her testimony. The defense objected to this procedure, arguing that the hearsay rule required that Debra herself be on the witness stand when the tapes were played. The trial court overruled this objection. Id. at ¶125. On appeal, Perez contended that by letting the tapes be played during the detective's testimony and not requiring that they be played during Debra's testimony, the trial court somehow deprived him of the right to cross-examine Debra with respect to statements made by her during the taped conversations. Id. at 126.

{¶26} The Ohio Supreme Court found Perez's "confrontation claim lacks merit." Id. at ¶ 127. The Court reasoned as follows,

"[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."

*Crawford v. Washington* (2004), 541 U.S. 36, 59, 124 S.Ct. 1354, 158

L.Ed.2d 177, fn. 9, *citing California v. Green* (1970), 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489. *See also State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 110. Perez cites no authority for his contention that the Confrontation Clause requires such a statement to be introduced during the testimony of the declarant.

Moreover, nothing would have prevented Perez from cross-examining Debra about her statements on the tapes had he chosen to do so. Under Evid.R. 611(B), cross-examination is not limited to the scope of direct examination, but may cover "all relevant matters." Thus, Perez could have asked Debra about the taped conversations on cross-examination, notwithstanding that they were not introduced during her direct examination.

124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 127-128.

**{¶27}** In the case at bar, B.A. testified during Davis's jury trial. Nothing prevented Davis from cross-examining B.A. about the statements she made during the forensic interview. Although the statements were played *after* B.A. testified, Davis had the tapes of the interview prior to trial, was aware of the contents and therefore could have asked her questions about the interview. Further, Davis did not attempt to recall B.A. as a witness after the tapes were played in order to question her about the statements.

**{¶28}** Thus, even the testimonial statements made during the forensic interview were admissible without violating the confrontation clause because B.A. testified and was subject to cross-examination.

*The Confrontation Clause and Hearsay Exceptions.*

**{¶29}** Having determined that B.A.'s statements during the forensic interview are not barred by the Confrontation Clause, we must also now decide whether the statement was admissible under our rules of evidence. *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶165.

**{¶30}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119, 509 N.E.2d 383(1987). "The hearsay rule…is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States*, 512 U.S. 594, 598,114 S.Ct. 2431, 2434(1994).

**{¶31}** Prior to 2004, the Supreme Court of the United States had interpreted the Confrontation Clause to permit the state to use the hearsay statements of a declarant who did not appear at trial if the hearsay fell within "a firmly rooted hearsay exception" or if it otherwise bore "particularized guarantees of trustworthiness." *See, e.g., Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Evid.R. 803(4) provides

that the following are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Thus, statements made for purposes of medical diagnosis or treatment were admissible notwithstanding the inability of the accused to cross-examine the declarant. *White v. Illinois*, 502 U.S. 346, 356–357, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), and fn. 8.

*The Confrontation Clause, Hearsay Exceptions and Arnold.*

**{¶32}** In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the Ohio Supreme Court considered the admissibility of statements made during interviews at child-advocacy centers. *Arnold* involved a Confrontation Clause challenge. The issue in *Arnold* was whether a child's statements during an interview were for medical diagnosis or treatment, making them "non-testimonial," or whether they primarily served a forensic or investigative purpose, making them "testimonial" in violation of the defendant's confrontation rights.

**{¶33}** The Supreme Court first noted that child-advocacy centers are unique insofar as a single interview with a child serves "dual purposes," which are: "(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim." *Arnold* at ¶ 33. The majority then turned to the substance of the child's interview. It reasoned that some of the child's statements primarily had a forensic or investigative purpose. They included the child's assertion that the defendant had "shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were

while she was in the bedroom with Arnold, of Arnold's boxer shorts, of him removing them, and of what Arnold's 'pee-pee' looked like; and her statement that Arnold removed her underwear." Id. at ¶ 34. The Ohio Supreme Court reasoned that "[t]hese statements likely were not necessary for medical diagnosis or treatment. Rather, they related primarily to the state's investigation." Id.

{¶34} The *Arnold* Court also found, however, that "other statements provided information that was necessary to diagnose and medically treat" the child victim. Id. at ¶ 37. It noted that "[t]he history obtained during the interview is important for the doctor or nurse practitioner to make an accurate diagnosis and to determine what evaluation and treatment are necessary. For example, the nurse practitioner conducts a 'head to toe' examination of all children, but only examines the genital area of patients who disclose sexual abuse. That portion of the exam is to identify any trauma or injury sustained during the alleged abuse." Id. In particular, the Ohio Supreme Court held that the following statements by the victim during the interview were necessary for medical diagnosis or treatment: "statements that described the acts that Arnold performed, including that Arnold touched her 'pee-pee,' that Arnold's 'pee-pee' went inside her 'pee-pee,' that Arnold's 'pee-pee' touched her 'butt,' that Arnold's hand touched her 'pee-pee,' and that Arnold's mouth touched her 'pee-pee.'" Id. at ¶ 38. The fact that the victim already had undergone a "rape-kit examination" did not dissuade the majority from finding that the foregoing statements were necessary for subsequent medical diagnosis or treatment. Id. at ¶ 39. The majority also found nothing objectionable about considering the child's statements individually to determine which ones were for medical diagnosis or treatment and to exclude those that were not. Id. at ¶ 42. Finally, the Ohio Supreme Court found

nothing objectionable about the fact that police watched the interview or the fact that information obtained for medical purposes ultimately was used to prosecute the defendant. These considerations did "not change the fact" that some of the child's statements "were made for medical diagnosis and treatment." Id. at ¶ 43.

{¶35} Thus, it certainly appears that the Supreme Court in *Arnold* intermingled the confrontation and hearsay concerns of statements made by a sexual abuse victim during a forensic interview conducted by child-advocacy centers by finding the statements "were made for medical diagnosis and treatment" pursuant to Evid. 803(4) and therefore did not violate the confrontation clause.

{¶36} In the case at bar, concerning the abuse that occurred in October 2021 that formed the basis for Count Four of the Indictment, B.A. stated during the forensic examination that Davis rubbed her vagina over her clothing. In *Arnold,* the Ohio Supreme Court found the victim's statement that Arnold's hand touched her "pee-pee, was necessary for medical diagnosis or treatment. As was true in *Arnold,* B.A.'s statements in this case were important for the doctor or nurse practitioner to make an accurate diagnosis and to determine what evaluation and treatment were necessary.

{¶37} We find under the facts of this case that the statements made by B.A. during the forensic interview concerning the incident alleged to have occurred in October 2021 were made for medical diagnosis and treatment, and therefore admissible under Evid.R. 803(4). The statements are therefore nontestimonial, admissible as an exception to the hearsay rule and are admissible without offending the Confrontation Clause.

{¶38} Davis's First Assignment of Error is overruled.

II.

{¶39}  In his Second Assignment of Error, Davis argues that there was insufficient evidence introduced at trial to support his conviction on Count Four of the indictment.

**Standard of Appellate Review – Sufficiency of the Evidence**

{¶40}  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30; *State v. Jordan,* Slip Op. No. 2023-Ohio-3800, ¶13. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶41}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474,

2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Davis was guilty beyond a reasonable doubt of Gross Sexual Imposition as alleged in Count Four of the Indictment*

**{¶42}** Davis was convicted of Gross Sexual Imposition by force. Count Four alleged the conduct occurred between October 1, 2021 and October 31, 2021. R.C. 2907.05 provides in relevant part,

> (A) No person shall have sexual contact with another, not the spouse
> of the offender; cause another, not the spouse of the offender, to have
> sexual contact with the offender; or cause two or more other persons to
> have sexual contact when any of the following applies:
>
> (1) The offender purposely compels the other person, or one of the
> other persons, to submit by force or threat of force.

{¶43} "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶44} We found in our disposition of Davis's First Assignment of Error, B.A.'s statements concerning the sexual abuse occurring in October, 2021 made during the forensic interview are nontestimonial and are not excluded by the hearsay rule pursuant to the exception contained in Evid.R. 803(4) as statements made for purposes of medical diagnosis or treatment.

{¶45} In that interview B.A. stated that her aunt was in the shower and she was on the smaller couch, and after playing video games, Davis came over and rubbed her vagina over her clothing.

{¶46} A conviction for rape or gross sexual imposition does not require proof of trauma or physical injury. *See State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 44, *citing State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46; *State v. Schrock*, 11th Dist. Lake No. 2007-L-191, 2008-Ohio-3745, ¶ 23 ("The qualitative nature of these charges does not necessitate any specific physical injury or trauma to the genital area."); Cf. *State v. Hines*, 6th Dist. Lucas No. L-04-1234, 2006-Ohio-322, ¶ 20 ("Nevertheless, we find that it is the incidents of sexual abuse, not the actual physical injury to the victim's hymen, that the state must prove to establish rape.").

{¶47} Whether touching is done for the purpose of sexual gratification is a question of fact to be inferred from the type, nature, and circumstances surrounding the

contact. *State v. Cochran,* 5th Dist. Coshocton No. 03–CA–01, 2003-Ohio-6863, ¶ 15, *citing State v. Mundy,* 99 Ohio App.3d 275, 289, 650 N.E.2d 502(1994). We have held that the testimony of one witness, if believed by the factfinder, is enough to support a conviction. *See, State v. Dunn,* 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 133. The weight to be given the evidence introduced at trial and the credibility of the witnesses are primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus.

**{¶48}** R.C. 2907.05(A)(1) requires the victim's submission to sexual contact to be obtained by force or threat of force. *State v. Biggs*, 2022-Ohio-2481, 192 N.E.3d 1306 (5th Dist.), ¶16. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

**{¶49}** In *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988), the Supreme Court of Ohio found the amount of force required to meet this requirement varies depending on the age of the victim and the relationship between the victim and the defendant. Id. at ¶ 58. However, some amount of force must be proven beyond the force inherent in the crime itself. *State v. Dye*, 82 Ohio St.3d 323, 327, 695 N.E.2d 763, 766 (1998).

**{¶50}** Ultimately, the Ohio Supreme Court recognized that coercion is inherent in the parent-child relationship and stated that "force need not be overt and physically brutal, but can be subtle and psychological." *State v. Eskridge*, 38 Ohio St.3d 56, 58-59, 526 N.E.2d 304 (1988). In the final analysis, the Supreme Court has held that "a person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of

harm or evidence of significant physical restraint." *State v. Dye*, 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1998).

**{¶51}** Evidence was introduced that Davis is B.A.'s uncle. B.A. would stayed overnight at the residence of her aunt and uncle and was under their authority and supervision while in their home.

**{¶52}** We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Davis's conviction for Gross Sexual Imposition as set forth in Count Four of the Indictment.

**{¶53}** Davis's Second Assignment of Error is overruled.

III.

**{¶54}** In his Third Assignment of Error, Davis argues that his convictions are against the manifest weight of the evidence.

**Standard of Appellate Review – Manifest Weight**

**{¶55}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

**{¶56}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of

appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *State v. Jordan*, Slip Op. No. 2023-Ohio-3800; *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

**{¶57}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

**{¶58}** As one Court has explained,

> When faced with a manifest weight of the evidence challenge, we must consider whether the state "carried its burden of persuasion" before the trial court. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *see State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. Unlike the

burden of production, which concerns a party's duty to introduce enough evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. *Messenger* at ¶ 17. Therefore, in order for us to conclude that the factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence— which we reserve for only the most exceptional circumstances—we must find that the factfinder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387- 388, 678 N.E.2d 541 (1997). We accordingly sit as a "thirteenth juror" in this respect. Id.

*State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 8.

**{¶59}** Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**:  *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered*

**{¶60}** While there was conflicting testimony presented at trial, a defendant "is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented." *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 29. *See also State v. J.E.C.*, 10th Dist. No. 12AP-584, 2013-Ohio-1909, ¶ 42. The jury may

consider conflicting testimony from a witness in determining credibility and the persuasiveness of the account by either discounting or otherwise resolving the discrepancies. *State v. Taylor*, 10th Dist. No. 14AP-254, 2015-Ohio-2490, ¶ 34, *citing Midstate Educators Credit Union, Inc. v. Werner*, 175 Ohio App.3d 288, 2008-Ohio-641, ¶ 28 (10th Dist.). "'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.'" *State v. Petty*, 10th Dist. Franklin No. 15AP-950, 2017-Ohio-1062, ¶ 63, *quoting State v. Mullins*, 10th Dist. No. 16AP-236, 2016-Ohio-8347, ¶ 39.

{¶61} A reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶62}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Davis's guilt.

**{¶63}** Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. While Davis is certainly free to argue that the witnesses were either mistaken or lying, on a full review of the record we cannot say that the jury clearly lost its way or created a manifest injustice by choosing to believe the testimony of the state's witnesses. The jury was able to observe the witnesses, including J. A.-M., B.A. and Davis, subject to cross-examination, as well as see the forensic interview of B.A. in real time, and hear Davis's attorney's arguments concerning the evidence and witnesses.

**{¶64}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Davis was convicted. We do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction on any of the charges.

**{¶65}** Davis's Third Assignment of Error is overruled.

{¶66}  The judgment of the Delaware County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur.

[Cite as *State v. Davis*, 2024-Ohio-1504.]