[Cite as *State v. Copeland*, 2025-Ohio-2204.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                             :

       Plaintiff-Appellee,                       :

                                       No. 24AP-331
v.                                                              :          (C.P.C. No. 20CR-4742)

Chardrick R. Copeland,                           :          (REGULAR CALENDAR)

       Defendant-Appellant.                    :

---

D E C I S I O N

Rendered on June 24, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Michael A. Walsh*, for appellee. **Argued:** *Michael A. Walsh*.

**On brief:** *Patituce & Associates, LLC*, and *Joseph C. Patituce*, for appellant. **Argued:** *Joseph C. Patituce*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Chardrick R. Copeland, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, following a bench trial, of two counts of gross sexual imposition and one count of rape. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On October 7, 2020, Copeland was charged with three third-degree felony counts of gross sexual imposition involving victims under the age of 13 and one count of first-degree felony forcible rape of a minor under the age of 13. The charges related to three different victims. Two of the gross sexual imposition charges related to allegations that Copeland had sexual contact with J.H. when J.H. was under the age of 13. One of the gross sexual imposition charges related to allegations that Copeland had sexual contact with B.J.

when B.J. was under the age of 13. The rape charge was based on allegations that Copeland engaged in sexual conduct with A.B. when A.B. was under the age of 13.

{¶ 3} Copeland waived his right to a jury trial and, on March 25, 2024, the case proceeded to a bench trial. At the conclusion of the three-day trial, the court found Copeland guilty of the two gross sexual imposition charges related to J.H. and guilty of the rape charge involving A.B., but not guilty of the gross sexual imposition charge relating to B.J.

{¶ 4} Because this appeal relates only to the charges for which the trial court found Copeland guilty, we recount only the facts and procedural history relevant to those charges here.

### A. Testimony related to J.H.

{¶ 5} J.H. was 15 years old at the time of trial. J.H. testified that he first met Copeland while taking roller-skating lessons from Copeland at the Skate Zone roller rink. Copeland and J.H.'s mother started dating and, during the period in which they were dating, J.H. and his mother would often spend the night at Copeland's residence.

{¶ 6} J.H. testified that, around the time that he was in the third grade, there were multiple occasions while staying at Copeland's house that Copeland touched J.H.'s penis, or Copeland put J.H.'s penis in his mouth. J.H. also testified that, on at least one occasion, Copeland kissed J.H., and, on another, Copeland showed J.H. a sex video then forced J.H. to touch Copeland's penis.

{¶ 7} In the fourth grade, J.H. disclosed Copeland's actions to a school counselor.

{¶ 8} J.H.'s mother, A.C., also testified. She said she met Copeland at Skate Zone when she took J.H. there for skate lessons with Copeland. She testified that J.H. was nine or ten years old around the time that she was in a relationship with Copeland. She confirmed that she and J.H. had stayed overnight at Copeland's house on occasion. A.C. testified that her relationship with Copeland eventually ended, and she and J.H. no longer stayed at Copeland's house. It was not until J.H.'s disclosure to his school counselor that A.C. became aware, through the school, of Copeland's actions involving J.H. A.C. testified that the school reported the disclosure to law enforcement, and J.H. met with a detective and with an agency for an interview. A.C. testified that J.H. did not specifically share with her what happened between him and Copeland.

**B. Testimony related to A.B.**

{¶ 9} A.B. was 16 years old at the time of trial. He testified that Copeland was a family friend and that he viewed Copeland as an uncle or friend with whom he would sometimes "chill out." (Tr. Vol. 2 at 193.) A.B. testified that, in April 2020, when he was around 11 years old, he was living with his grandparents, his aunt and uncle, and a close family friend. One evening, a group of friends, including Copeland, was at the house for a cookout and to hang out and play video games. A.B. testified that his cousin and Copeland decided to spend the night at the house. At the time, Copeland lived a few blocks away. A.B. and his cousin shared a room that evening in different beds.

{¶ 10} A.B. testified that he woke up to Copeland pulling down his underwear. A.B. said "no" and tried to push Copeland away. (Tr. Vol. 2 at 200-01.) A.B. testified that Copeland responded angrily, eventually restraining A.B.'s hands and covering A.B.'s mouth. Ultimately, Copeland inserted his penis into A.B.'s anus. A.B. testified that the incident lasted around 15 to 30 seconds after which A.B. pushed Copeland away and Copeland left the room. A.B. testified that his cousin slept through the incident.

{¶ 11} A.B. testified that he kept to himself the next day but later disclosed the incident to a friend and an uncle when one of them noticed that A.B. was acting like something was wrong. A.B. testified that he and his uncle eventually talked to his grandmother and mother about the incident. Thereafter, he said that his family contacted law enforcement and he had an examination and interview at Nationwide Children's Hospital.

{¶ 12} A.B.'s mother, B.B., testified. She said Copeland was a friend of a friend who spent time at A.B.'s grandparents' house. She said that A.B. sometimes went to Copeland's house, which was known as a "boys' hangout," or to the skating rink where Copeland worked. (Tr. Vol. 2 at 236.) B.B. testified that she learned of the incident between Copeland and A.B. after A.B. had told his grandmother about it. B.B. testified that, after learning about the incident, she contacted law enforcement then waited, as instructed, for a detective to contact her. At the detective's direction, she took A.B. to Nationwide Children's Hospital for a physical examination and interview.

{¶ 13} A.B.'s uncle, M.W., also testified. He lived with A.B.'s grandmother. M.W. testified that he and Copeland were good friends for two to three years. M.W. testified that Copeland and several others, including A.B., were at his house on the night of the incident,

playing video games. M.W. confirmed that Copeland and A.B.'s cousin spent the night. M.W. said that Copeland had shared a room with him that night and, at some point, he woke up and Copeland was not there. When he woke up again, Copeland was back in the room.

{¶ 14} M.W. testified that, the next day, A.B. told him what happened between A.B. and Copeland, and he and A.B. shared the information with A.B.'s grandmother.

{¶ 15} Katharine Doughty, a nurse practitioner at Nationwide Children's Hospital, also testified. The trial court admitted Doughty to testify as an expert in the area of child sexual abuse examination. She had conducted an examination of A.B. and testified regarding the contents of the medical report she completed as a result of that examination.

{¶ 16} Celeste Prince, a forensic interviewer with the Child Advocacy Center at Nationwide Children's Hospital, also testified. The trial court admitted Prince to testify as an expert in the area of forensic interviewing of sexually abused children. She testified generally regarding the process of forensic interviewing at Nationwide Children's Hospital and, more specifically, regarding her forensic interview of A.B. and the report she prepared following that interview.

{¶ 17} Prince also testified that the forensic interview with A.B. was recorded. Over the objection of Copeland's counsel, the court allowed the entire forensic interview video to be played during Prince's testimony.

### C. Sentence and appeal

{¶ 18} The trial court imposed a nonmandatory 36-month concurrent prison term on each of the gross sexual imposition charges. The trial court ordered these terms to run consecutively to a mandatory, indefinite prison term of 25 years to life imposed on the rape charge.

{¶ 19} On April 30, 2024, the trial court journalized Copeland's convictions and sentence in a judgment entry. Copeland timely appealed.

## II. Assignments of Error

{¶ 20} Copeland appeals and assigns the following four assignments of error for our review:

> [I.] Defendant was deprived of the effective assistance of counsel when trial counsel failed to move to sever the counts in the indictment that involved different conduct, years apart, in different locations, and would not have been

i[n]dependently admissible against defendant absent the joinder.

[II.] Defendant was deprived of the effective assistance of counsel when trial counsel failed to object to improper vouching testimony that the state [e]licited from its expert witnesses.

[III.] Defendant was deprived of the effective assistance of counsel when trial counsel failed to object to improper expert testimony when expert was not qualified as an expert in the manner in which memory works.

[IV.] The trial court erred in ruling that the Sixth Amendment did not apply to out of court statements made by witnesses that were introduced after the witnesses testified but in which the state never inquired on the subject introduced.

## III. Discussion

{¶ 21} Copeland's first three assignments of error assert that trial counsel provided ineffective assistance in some way. First, Copeland argues that his trial counsel provided ineffective assistance by failing to move to sever the counts in the indictment involving separate incidents and different victims. In his second and third assignments of error, Copeland argues that his trial counsel provided ineffective assistance by failing to object to expert witness testimony purportedly vouching for the victim-witnesses' veracity when the expert witnesses were not qualified as experts on how memory works.

{¶ 22} Copeland must satisfy a two-prong test to demonstrate ineffective assistance of counsel. First, he must demonstrate that his trial counsel's performance was deficient. Second, he must demonstrate that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). "The failure to make *either* showing defeats a claim of ineffective assistance of counsel." (Emphasis added.) *State v. Kennard*, 2016-Ohio-2811, ¶ 14 (10th Dist.), citing *Bradley* at 143.

{¶ 23} Even if Copeland could establish that his trial counsel performed deficiently as he alleges, he has not demonstrated prejudice as required by the second part of the test for ineffective assistance of counsel. As noted above, both parts of the test must be satisfied for a successful claim. Establishing prejudice requires demonstrating that "there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the trial

would have been different." *Kennard* at ¶ 15, citing *Strickland* at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.*, citing *Strickland* at 694.

{¶ 24} On each of the claimed bases of ineffective assistance, Copeland fails to demonstrate a reasonable probability that the outcome of trial would have been different. Each of Copeland's ineffective assistance arguments relate to his concern that evidence was considered that should not have been considered, either because the counts in the indictment should have been severed and considered separately, or because his counsel allowed the court to consider objectionable expert testimony.

{¶ 25} In a bench trial in a criminal case, there exists a presumption that " 'the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.' " *State v. Post*, 32 Ohio St.3d 380, 384 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 151 (1968), *rev'd on other grounds by State v. McDermott*, 72 Ohio St.3d 570 (1995). Copeland offers no evidence to demonstrate that the court here considered the purportedly improper testimony or evidence. In fact, the record demonstrates that it did not.

{¶ 26} With respect to Copeland's claim that his counsel should have moved to sever the counts in the indictment, Copeland argues, "It is difficult to understand, . . . how any reasonable fact finder can ignore this type of unfairly prejudicial evidence coming in and being able to render a just verdict." (Appellant's Brief at 12.) But the trial court did, in fact, find Copeland not guilty with respect to one of the victims. This indicates that the trial court was able to consider each count separately.

{¶ 27} Additionally, after closing arguments, the trial court described the guidelines for its deliberation (in lieu of jury instructions) and stated:

> So first and foremost, we have separate charges in this count. And a common jury instruction is that charges set forth in each count in the indictment constitute separate and distinct matters. I am going to consider each count and the evidence applicable to each count separately, and I will state my findings as to each county uninfluenced by my findings as to any other count. Basically the knowledge is the defendant can be found guilty of - - or not guilty of one or other counts. They are each separate, and I will think of them separately. And I won't let my decision with respect to one count influence my decision with respect to another count.

(Tr. Vol. 4 at 486.)

{¶ 28} With respect to the purportedly improper expert testimony that is the subject of Copeland's second and third assignments of error, Copeland simply states that his counsel's performance "was so deficient" that a new trial is warranted. But Copeland does not point to a specific basis on which prejudice can be established. Each of the victim-witnesses for whom the experts purportedly vouched also testified themselves. Thus, even if the expert witness statements to which Copeland claims his counsel should have objected were removed from the court's consideration, the trial court, as the finder of fact in a bench trial, was able to assess and weigh the witnesses' credibility based on other evidence in the record.

{¶ 29} On these facts, we find that Copeland has failed to demonstrate a reasonable probability that the result of the trial would have been different if his trial counsel had moved to sever the counts or had objected to the expert testimony. Therefore, Copeland has not demonstrated the prejudice prong required to establish ineffective assistance of counsel.

{¶ 30} Accordingly, we overrule Copeland's first, second, and third assignments of error.

{¶ 31} In his fourth assignment of error, Copeland argues that his right to confront witnesses was violated when the state played the forensic interview of A.B. after A.B. had testified.

{¶ 32} Under the Confrontation Clause in the Sixth Amendment to the United States Constitution, a criminal defendant has the right "to be confronted with the witnesses against him."[1] *See also Crawford v. Washington*, 541 U.S. 36, 42 (2004); *State v. Carter*, 2024-Ohio-1247, ¶ 27. This procedural guarantee applies to federal and state prosecutions. *Crawford* at 42. Typically, the Confrontation Clause is invoked where a witness is not available for trial. In that situation, the Sixth Amendment requires that the testimonial statements of a witness that does not appear at trial be admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine. *Id.* at 68.

---

[1] In the Ohio Constitution, Article I, Section 10 provides that a criminal defendant "shall be allowed . . . to meet the witnesses face to face." *See also Crawford v. Washington*, 541 U.S. 36, 42 (2004). Copeland's argument references only the "Sixth Amendment," however, and does not refer to or make an argument under the Ohio Constitution. Thus, we presume that Copeland relies exclusively on the federal Sixth Amendment and conduct our analysis accordingly. *See State v. Carter*, 2024-Ohio-1247, ¶ 34.

{¶ 33} Here, Copeland does not argue that a witness did not appear for trial. Instead, he argues that his Sixth Amendment right to confrontation was violated when the state played the entire forensic interview of A.B. after A.B. had already testified.

{¶ 34} The Fifth District Court of Appeals considered similar facts in *State v. Davis*, 2024-Ohio-1504 (5th Dist.). In *Davis,* the defendant argued that his right to confrontation under the Sixth Amendment was violated when the judge allowed portions of the victim's forensic interview to be played for the jury after the victim had already testified at the jury trial. *Davis* at ¶ 15, 27. The court noted that, although the forensic interview was introduced after the victim had testified, Davis had the interview tapes prior to trial and was aware of the contents and, therefore, could have asked questions during cross-examination about the interview or sought to recall the witness after the interview was played for the jury. *Id*. at ¶ 27. The court concluded that "the testimonial statements made during the forensic interview were admissible without violating the confrontation clause because [the victim] testified and was subject to cross-examination." *Id*. at ¶ 28.

{¶ 35} *Davis* follows the Supreme Court of Ohio's decision in *State v. Perez*, 2009-Ohio-6179. In *Perez*, the defendant raised a Confrontation Clause objection to taped conversations between he and his wife, Debra, that were introduced prior to, but not during, Debra's testimony. The Supreme Court held that there was no Confrontation Clause violation, explaining as follows:

> "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. * * * The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford v. Washington* (2004), 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177, fn. 9, citing *California v. Green* (1970), 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489. See also *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 110. Perez cites no authority for his contention that the Confrontation Clause requires such a statement to be introduced *during* the testimony of the declarant.
>
> Moreover, nothing would have prevented Perez from cross-examining Debra about her statements on the tapes had he chosen to do so. Under Evid.R. 611(B), cross-examination is not limited to the scope of direct examination, but may cover "all relevant matters." Thus, Perez could have asked Debra about the taped conversations on cross-examination,

notwithstanding that they were not introduced during her direct examination.

(Emphasis in original.) *Perez* at ¶ 127-28.

{¶ 36} Here, Copeland has not argued that he was unaware of the forensic interview involving A.B. until after A.B. testified. During A.B.'s direct examination, A.B. testified that he had an examination and interview at Nationwide Children's Hospital, and Copeland's counsel referenced the interview during cross-examination. Copeland's counsel would also have been aware prior to trial that the state had subpoenaed Celeste Prince, the person who conducted the forensic interview, to testify at trial. Therefore, Copeland's counsel could have asked A.B. questions about the interview during cross-examination, even though the video of the interview had not yet been introduced.

{¶ 37} Additionally, there is no indication in the record that Copeland's counsel sought to recall A.B. following the admission of the forensic interview video after A.B. had testified. Consistent with *Perez* and *Davis*, we do not find that Copeland can establish a Confrontation Clause violation on these facts.

{¶ 38} Copeland's fourth assignment of error is overruled.

## IV. Conclusion

{¶ 39} For the foregoing reasons, we overrule Copeland's four assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

———————