[Cite as *State v. Snider*, 2012-Ohio-2183.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00132 |
| TROY SNIDER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County Municipal Court, Case No. 11CRB893

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     May 15, 2012

APPEARANCES:

For Plaintiff-Appellee

JONATHAN C. DIERNBACH
Prosecuting Attorney
40 West Main Street
Newark, OH 43055

For Defendant-Appellant

RICHARD L. INNIS
Innis & Barker Co., L.P.A.
8415 Pulsar Place, Suite 380
Columbus, OH 43240

*Gwin, P.J.*

{¶1} On December 14, 2011, appellant Troy Snider ("Snider") was found guilty after a bench trial of one count of domestic violence, a first-degree misdemeanor. The Court sentenced him, in part, to 180 days in jail with 150 days suspended, with requirements to complete alcohol and domestic violence counseling. The court imposed a fine of $250.00 plus court cost. Snider was further ordered to comply with conditions set by the probation department.

Facts and Procedural History

{¶2} Brianna Snider is the thirteen-year-old daughter of Snider and his wife Samantha. Snider and Samantha have been married thirteen years and have three children. On May 8, 2011, Brianna was at home with two friends, her parents, her younger brother, sister, and her twenty-year-old cousin.

{¶3} During the morning Brianna's friend called 9-1-1 then handed the telephone to Brianna. An emotional Brianna informed the dispatcher that Snider and Samantha had been upstairs talking when Snider began yelling at Samantha, pushed her to the ground and started to choke her. (State's Exhibit 2). Brianna told the dispatcher that her younger sister and brother as well as Brianna's two friend's had been inside the home when the incident began. Brianna could be heard explaining to her younger sister "dad was beating mom that's not what guys are suppose to do to people." The younger sister was extremely upset and "freaking out." Brianna can also be heard explaining to her sister "he started choking her when you weren't looking." Brianna further informed the dispatcher that she had tried to get Snider off Samantha

but got scared and ran outside. The dispatcher told Briana to walk toward the Sheriff's cruiser that was approaching her mother as they spoke.

{¶4} When Deputy Shannon Day of the Licking County Sherriff's Office arrived, Samantha was walking down the street. He approached Samantha as Brianna and the others were walking toward him. He described Samantha as upset and crying. Deputy Day observed bruising on Samantha's face and redness around the throat area. He described Brianna as upset and crying. Her younger sister was extremely upset to the point that she could not speak to the deputy. Deputy Day obtained written statements from Samantha and Brianna. Samantha told the deputy that she did not want to file charges against Snider.

{¶5} At trial, Samantha testified on Snider's behalf. She testified that the evening before the incident she was very intoxicated by a combination of drugs and alcohol. She testified that she had not slept, and was still intoxicated the morning of the incident. Samantha testified further that an argument erupted over her wanting to take Brianna and Brianna's friends in the car. Snider and Samantha began yelling at each other. Samantha testified that she struck Snider. She further admitted that she had written in her statement to Deputy Day that Snider "threw or pushed" her to the floor. Samantha further testified that Brianna had tried to come to her assistance. At trial, Samantha claimed that the bruises on her face were a result of striking a table as she fell to the floor. She contended at trial that Snider was trying to restrain her as she violently fought against him.

{¶6} At trial, Brianna testified that her opinion of what occurred on the night in question changed because of hearing stories from Snider and Samantha. She now

claimed that she did not have a clear view and that Snider was holding Samantha down rather than choking her. She described injuries to Samantha face, chin and throat area.

{¶7}    Both the written statements of Brianna and Samantha as well as the audio recording of the 9-1-1 call were admitted into evidence without objection. The trial court recessed. When court re-convened, the trial court announced its decision,

> The Court has considered the exhibits, "Plaintiffs Exhibit One, Two, and Three" and the Court has also, has re-read the written exhibits, the statements of Brianna as well as the alleged victim in this case, Mrs. Snider. Court has also re-listen to the 9-1-1 call...if you listen to the explanation of the alleged victim Mrs. Snider she claims that she manipulated the situation in order to punish her husband um, and uh, therefore, fabricated portions of her written statement uh, and claims that in fact is not what happened. The Court also heard Brianna Snider testify here today that she was mistaken about what it is that she thought she saw and that after um, reconsideration on her own as well as discussion with her mother and father she has since come to the conclusion she did not see what she believed she saw. The Court finds both of the claims to be dubious at best...the Court finds much more creditable the excited utterances and present sense impressions that young Brianna Snider uh, conveyed to the dispatcher. uh, and they were recorded during the 9-1-1 call and the Court feels if there is any manipulation going on here, it's on behalf of the Defendant... that uh, in fact uh, these things did happen. Uh, and the Court believes beyond a reasonable doubt that in fact Mr. Snider

did cause or attempt to cause physical harm to Samantha Snider and for that reason the Court's going to enter a Guilty finding.

(T. at 40-41).

## Assignments of Error

**{¶8}** Snider raises one assignment of error,

**{¶9}** "I. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE DEFENDANT-APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE."

## Analysis

**{¶10}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown*, _U.S._, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶11}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact

finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶12} To find Snider guilty of domestic violence the trier of fact would have to find that appellant knowingly caused or attempt to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A) (3).

{¶13} R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶14} "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App. 3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a

defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* 2nd Dist. No. 16221, 1998 WL 214606 (May 1, 1998), (citing *State v. Elliott* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412(1995).

**{¶15}** R.C. 2923.02(A) provides a definition of attempt, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

**{¶16}** The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059(1976), paragraph one of the syllabus, *overruled in part by State v. Downs*, 51 Ohio St.2d 47, 364 N.E.2d 1140(1977); See also, *State v. Ashbrook*, 5th Dist. No.2004-CA-00109, 2005-Ohio-740, *reversed on other grounds and remanded for re-sentencing pursuant to State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, *In re: Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109.

**{¶17}** In defining a substantial step, the *Woods* Court indicated that the act need not be the last proximate act prior to the commission of the offense. *Woods* at 131-32, 357 N.E.2d 1059. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. This test "properly directs attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes

apparent." *Woods, supra* at 132, 357 N.E.2d at 1063. In other words, a substantive crime would have been committed had it not been interrupted. Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case. *State v. Group*, 98 Ohio St.3d 248, 262, 2002-Ohio-7247, 781 N.E.2d 980(2002), ¶100.

**{¶18}** Snider does not dispute that Samantha was a ""family or household member." Further, Samantha, Brianna and Deputy Day each testified to the injuries visible on Samantha after the incident. Accordingly, Snider takes issue with the trial court's reliance upon the statements made in Brianna's 9-1-1 call rather than the statements she and Samantha made at trial.

**{¶19}** Snider relies exclusively on the First District's decision in *State v. Attaway,* 111 Ohio App. 3d 488, 676 N.E. 2d 600(1996) in support of his argument against sufficiency of the evidence. The court in *Attaway* held that a domestic violence conviction was based on insufficient evidence because the victim's original and subsequently recanted statement was "so inherently suspect that the statement [was] insufficient as a matter of law." *Attaway* at 491.

**{¶20}** However, the First District subsequently explained the decision in *Attaway* was limited to the facts of that case*,*

> [we held] that the credibility of a statement made to the arresting officer by the victim, which was uncorroborated and completely contradicted by the victim's testimony at trial, was so inherently suspect that it was legally insufficient to establish Attaway's guilt beyond a

reasonable doubt. Obviously, our holding was limited to the facts of that case.

*State v. Pettit*, 1st Dist. No. C-980261, 1999 WL 12759 (Jan 15, 1999). In *Attaway,* the court found that the record did not contain any corroborating evidence to support the crime.

**{¶21}** In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224(2006), the United States Supreme Court considered the meaning of the term "testimonial." The Court found the Confrontation Clause applies only to testimonial hearsay and not to statements made "to enable police assistance to meet an ongoing emergency." Id. at 2277. In *Davis*, the victim had made a 911 emergency call, and in the course of that call incriminated the defendant. The Supreme Court, in affirming the lower court's admission of the statements, held:

Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

**{¶22}** Id. at 2273–2274. In the case of 9-1-1 calls, the *Davis* Court reasoned, the declarants are generally "speaking about events *as they [are] actually happening * * *.*" (Emphasis    sic.) *Id.* at    2276.    9-1-1    callers    are    typically    facing    ongoing

emergencies. *Id.* Under these exigent circumstances, the callers are not testifying as witnesses, and their statements do not qualify as testimonial in nature.

**{¶23}** In the case at bar, Brianna's telephone call also fits within the excited utterance hearsay exception and is admissible. 9-1-1 calls are generally admissible as excited utterances or present sense impressions. See *State v. Banks,* 10th Dist. No. 03AP-1286, 2004-Ohio-6522; *State v. Holloway,* 10th Dist. No. 02AP-984, 2003-Ohio-3298. Thus, the trial court could rely upon the statements Brianna made during the 9-1-1 call to the police.

**{¶24}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the factfinder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008-Ohio-6635, ¶31, quoting *State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125.

**{¶25}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

A fundamental premise of our criminal trial system is that 'the [trier of fact] is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the [trier of fact], who [is] presumed to be fitted for it by [his or her] natural intelligence and... practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶26}** Although Snider cross-examined the witnesses and argued that Samantha was as much at fault for the melee as Snider, and further that there was a lack of evidence that Snider had choked Samantha or caused her physical harm, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

**{¶27}** The judge was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [judge] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the [judge] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, ¶ 21,

citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

{¶28} In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false*. See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

{¶29} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in convicting Snider of domestic violence.

**{¶30}** Based upon the foregoing and the entire record in this matter, we find Snider's conviction was not against the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before it. The judge as a trier of fact can reach different conclusions concerning the credibility of the testimony of Brianna and Samantha at trial, and concerning the evidence presented by the parties; this court will not disturb that finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of Snider's guilt.

**{¶31}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of domestic violence beyond a reasonable doubt.

**{¶32}** Snider's sole assignment of error is overruled in its entirety and the judgment of the Licking County Municipal Court is affirmed.

By Gwin, P.J.,

Farmer, J., and

Edwards, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. SHEILA G. FARMER

_____

HON. JULIE A. EDWARDS

WSG:clw 0426

[Cite as *State v. Snider*, 2012-Ohio-2183.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TROY SNIDER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-00132 |

For the reasons stated in our accompanying Memorandum-Opinion, Snider's sole assignment of error is overruled in its entirety and the judgment of the Licking County Municipal Court is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS