[Cite as *State v. Johnston*, 2025-Ohio-5023.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| STATE OF OHIO | |
| --- | --- |
| Plaintiff - Appellee | Case No. 2025 CA 00001 |
| | Opinion And Judgment Entry |
| -vs- | |
| | Appeal from the Fairfield County Court of Common Pleas, Case No. 2024 CR 0275 |
| DAVID JOHNSTON | |
| | Judgment:   Affirmed |
| Defendant – Appellant | Date of Judgment Entry: 11/3/2025 |

**BEFORE:**   ANDREW J. KING, P.J., KEVIN W. POPHAM, J.; DAVID M. GORMLEY, Appellate Judges

**APPEARANCES:** R. KYLE WITT, BY MARK A. BALAZIK for Plaintiff-Appellee; TODD BARSTOW, For Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}    Appellant David Johnston appeals from the judgment of the Fairfield County Court of Common Pleas convicting him of Aggravated Possession of Drugs, a fifth-degree felony, and Illegal Use or Possession of Drug Paraphernalia, a fourth-degree misdemeanor.  Johnston contends that the evidence presented at trial was insufficient to sustain his conviction for aggravated possession of drugs.  For the reasons that follow, we affirm the judgment of the trial court.

*Facts and Procedural History*

{¶2}    On June 6, 2024, the Fairfield County Grand Jury indicted Johnston on one count of Aggravated Possession of Drugs, a fifth-degree felony, and one count of Illegal Use or Possession of Drug Paraphernalia, a fourth-degree misdemeanor.

{¶3} The matter proceeded to a jury trial, which commenced on December 17, 2024.

{¶4} The evidence at trial revealed the following sequence of events. On the evening of March 7, 2024, at approximately 10:00 p.m., Officers Taylor Dean and Mark Squires of the Lancaster Police Department were patrolling a bike path near West Fair Avenue in Lancaster, Ohio. *Trial Transcript ("T.")* at 101. While conducting their patrol, the officers encountered Johnston lying on the ground just off the bike path, appearing either asleep or unconscious.

{¶5} Concerned for his condition, the officers attempted several times to awaken him. When Johnston finally responded, he appeared lethargic and disoriented, leading the officers to suspect that he was under the influence of a controlled substance. Their suspicions increased when Officer Dean noticed a green straw protruding from Johnston's coat pocket. *T.* at 107. Upon closer inspection, Officer Dean testified that he observed burn marks on both ends of the straw—marks consistent with having been used to smoke a substance. *Id.* at 107-108. Dean testified that such straws are commonly used to ingest methamphetamine. *Id.* When questioned about his condition, Johnston explained that his lethargy was due to consuming a potent THC-laced brownie. *Id.* at 109.

{¶6} The officers' investigation soon revealed additional incriminating evidence. Officer Dean testified that he discovered a transparent plastic bag containing a crystalline substance directly beneath Johnston. *T.* at 109; State's Exhibit 2; State's Exhibits 5A-5F. The parties stipulated that the bag contained 0.29 grams of methamphetamine, a Schedule II controlled substance. *T.* at 112-113; Joint Exhibit 1. The officers placed

Johnston under arrest and transported him to the Fairfield County Sheriff's Department for booking.[1]

{¶7} The State's evidence did not end with the physical discovery of contraband. During the booking process, Officer Dean testified that Johnston could be heard telling a nurse that he had smoked "a little ice," a street term for methamphetamine. *T.* at 119-120; State's Exhibit 1. The jury was able to view the officers' encounter with Johnston - including his demeanor at the scene and his statements during booking - through the body-camera footage recorded by Officer Dean. State's Exhibit 1; *T.* at 103-104, 119-120.

{¶8} The defense elected not to present any evidence, and the case was submitted to the jury.

{¶9} After deliberation, the jury returned guilty verdicts on both counts. The trial court imposed a three-year term of community-control sanctions, including inpatient drug treatment, and reserved a twelve-month prison sentence. *T.* at 192-193.

*Assignment of Error*

{¶10} Johnston raises one assignment of error for our consideration,

{¶11} "I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED POSSESSION OF DRUGS AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

---

[1] During sentencing, it was revealed that Johnston was not booked into the jail that night. Instead, the officers had to administer Naloxone to Johnston and transport him to the hospital. *T.* at 186-187.

*Law and Analysis*

{¶12}   Johnston argues that his conviction for Aggravated Possession of Drugs is unsupported by sufficient evidence.   Specifically, he contends that the State failed to prove he knowingly possessed the baggie of methamphetamine discovered beneath him while he was unconscious on the ground[2].  We disagree.

**Standard of Appellate Review – Sufficiency of the Evidence**

{¶13}   We review a challenge to the sufficiency of the evidence de novo because it raises a question of law.  *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13.  The Sixth Amendment guarantees the right to trial by an impartial jury, and the Due Process Clause requires the State to prove every element of the charged offense beyond a reasonable doubt.  *United States v. Gaudin*, 515 U.S. 506, 509-510 (1995); *Hurst v. Florida*, 577 U.S. 92 (2016).

{¶14}   In reviewing a sufficiency challenge, we examine the statutory elements of the offense in light of the evidence presented at trial.  *State v. Richardson*, 2016-Ohio-8448, ¶ 13.   Our inquiry does not involve assessing witness credibility or weighing conflicting testimony.  *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997)*; *Walker* at ¶ 30. Rather, we ask whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt.  *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), citing *Jenks*; see also *Walker* at ¶ 31; *State v. Poutney*, 2018-Ohio-22, ¶ 19.

---

[2] Johnston does not contest his conviction for Illegal Use or Possession of Drug Paraphernalia, a fourth-degree misdemeanor.

{¶15}   A conviction will not be reversed for insufficient evidence unless reasonable minds could reach only one conclusion—acquittal.  *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *accord State v. Montgomery*, 2016-Ohio-5487, ¶ 74.

**Governing Law**

{¶16}   Johnston was convicted of aggravated possession of drugs under R.C. 2925.11(A) and (C)(1)(a), which provide, in relevant part:

(A) No person shall knowingly obtain, possess, or use a controlled substance or controlled substance analog.

…

(C)(1)(a) If the drug involved in the violation is a compound, mixture, preparation, or substance included in Schedule I or II… the offender is guilty of aggravated possession of drugs, a felony of the fifth degree.

***Knowingly***

{¶17}   R.C. 2901.22(B) sets forth the definition of how and when a person acts knowingly,

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist.  When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is

a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶18} Absent an admission, a defendant's mental state must be inferred from the surrounding facts and circumstances, including the act itself. *State v. Johnson*, 56 Ohio St.2d 35, 38 (1978), citing *State v. Huffman*, 131 Ohio St. 27 (1936); *see also State v. Rojas*, 64 Ohio St.3d 131, 139 (1992); *State v. Huff*, 145 Ohio App.3d 555, 563 (1d Dist. 2001).

### *Possession*

{¶19} R.C. 2925.01(K) defines "possession" as "having control over a thing or substance," though it cannot be inferred solely from access to the premises where the item is found. Under R.C. 2901.21(D)(1), possession is a voluntary act if the person knowingly procured or received the item or was aware of having control of it for a sufficient time to end the possession.

{¶20} Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176 (1989); *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Constructive possession exists when the defendant can exercise dominion or control over the contraband, even if it is not in his immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 332 (1976). Dominion and control may be proven by circumstantial evidence, including proximity to the contraband. *State v. Trembly*, 137 Ohio App.3d 134 (8th Dist. 2000); *State v. Barr*, 86 Ohio App.3d 227, 235 (8th Dist. 1993); *State v. Morales*, 2005-Ohio-4714, ¶ 50 (5th Dist.). Ownership of the contraband is unnecessary to establish constructive possession, and multiple individuals may share constructive

possession simultaneously. *Wolery*, 46 Ohio St.2d at 332; *State v. Pitts*, 2000-Ohio-1986 (4th Dist.).

### Circumstantial Evidence

{¶21} Circumstantial evidence is defined as "'testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved.'" *State v. Nicely*, 39 Ohio St.3d 147,150 (1988), quoting Black's Law Dictionary (5th Ed. 1979).

{¶22} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St. 3d 259, 272 (1991) at paragraph one of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks,* 61 Ohio St. 3d at 272.

### Analysis

{¶23} Viewed against this legal framework, Johnston's challenge fails. Although he was unconscious when the officers first approached, the evidence presented at trial - if believed - demonstrated constructive, if not actual, possession.

{¶24} The jury observed the officers' encounter with Johnston through the body-camera video. The footage showed Johnston in possession of a straw with burnt ends, which Officer Dean testified was commonly used to ingest methamphetamine. Most

notably, during booking, Johnston admitted to a nurse that he had smoked "a little ice," a street term for methamphetamine.

{¶25} This admission, coupled with the discovery of the methamphetamine directly beneath Johnston and his possession of drug paraphernalia, permitted the jury to infer that he was aware of the drug's presence and exercised control over same. These circumstances, viewed collectively, strongly support the conclusion that Johnston knowingly possessed the methamphetamine. *See State v. Shelby*, 2019-Ohio-1564, ¶ 26 (6th Dist.) (drugs found on seat, underneath where defendant had been lying; *see also State v. Carson*, 2024-Ohio-30, ¶ 12 (12th Dist.) (drugs found on lap of sleeping defendant).

{¶26} The jury heard the defense's argument that Johnston was not aware of the drugs beneath him; however, the jury rejected this explanation. The jury may consider conflicting evidence in determining credibility and the persuasiveness of the account of a witness by either discounting or otherwise resolving the discrepancies. *State v. Taylor*, 2015-Ohio-2490, ¶ 34 (10th Dist.), citing *Midstate Educators Credit Union, Inc. v. Werner*, 2008-Ohio-641, ¶ 28 (10th Dist.); *State v. Ashcraft,* 2023-Ohio-2378, ¶ 25 (5th Dist.). "'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.'" *State v. Petty*, 2017-Ohio-1062, ¶ 63 (10th Dist.), quoting *State v. Mullins*, 2016-Ohio-8347, ¶ 39 (10th Dist.); *see also State v. Davis*, 2024-Ohio-1504, ¶ 60 (5th Dist.); *State v. Brunner,* 2017-Ohio-2618, ¶ 22 (5th Dist.).

{¶27} In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not

our province to choose which one we believe." *State v. Dyke*, 2002-Ohio-1152, ¶ 13 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999); *State v. Snider,* 2012-Ohio-2183, ¶ 24 (5th Dist.); *Davis,* 2024-Ohio-1504, ¶ 61.

{¶28}  Having carefully reviewed the record and the applicable law, we conclude that the State presented sufficient evidence, including ample circumstantial evidence, from which a rational jury could make a reasonable inference that Johnston knowingly possessed methamphetamine and, therefore, find guilt beyond a reasonable doubt.

{¶29}  Accordingly, we find Johnston's conviction for aggravated possession of drugs was supported by sufficient evidence, and we overrule Johnston's sole assignment of error.

{¶30}  For the reasons stated in our accompanying Opinion, the judgment of the Fairfield County Court of Common Pleas is affirmed.  Costs to Appellant, David Johnston.

By: Popham , J.

King, P.J. and

Gormley, J.