[Cite as *State v. Art*, 2025-Ohio-5313.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. CT 2025-0051 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Muskingum County Court of Common Pleas, Case No. CP 2024-0128 |
| SHANE ART | |
| Defendant - Appellant | Judgment:   Affirmed |
| | Date of Judgment Entry: November 24, 2025 |

**BEFORE:**   WILLIAM B. HOFFMAN, P.J., ROBERT G. MONTGOMERY, J., KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** Joseph A. Palmer for Plaintiff-Appellee; Christopher Bazeley, For Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   Appellant Shane Art ("Art") appeals from the judgment of the Muskingum County Court of Common Pleas convicting him of two counts of Gross Sexual Imposition, victim under thirteen years old, third-degree felonies in violation of R.C. 2907.05(A)(4)/(C)(2). Art contends that the evidence presented at trial was insufficient to sustain his convictions, that his convictions are against the manifest weight of the evidence and that his sentence was impermissibly enhanced in retaliation for maintaining his innocence.  For the reasons that follow, we affirm the judgment of the trial court.

*Facts and Procedural History*

{¶2}    This matter arose on February 22, 2024, when Art was indicted upon two counts of gross sexual imposition involving a victim less than thirteen years old. The matter proceeded to a jury trial, which commenced on March 4, 2025. The evidence at trial revealed the following sequence of events.

### The Initial Disclosure

{¶3}    The State first introduced testimony from B.K., the paternal grandfather of the victim E.D. (b. Dec. 14, 2014)[1]. 1T. at 177, 220.[2] B.K. testified that on October 18, 2023, he picked E.D. up from her after-school latchkey program and immediately noticed that she appeared troubled and frightened. *Id.* at 180, 186. Concerned by her demeanor, B.K. asked E.D. what was wrong. When she disclosed the reason for her distress, B.K. became alarmed. *Id.* at 187.

{¶4}    B.K. testified that he promptly telephoned his daughter, M.K., who is E.D.'s mother, as she was getting off work. *Id.* The family met at M.K.'s apartment and, acting quickly, proceeded together to the police station to report E.D.'s disclosure. *Id.* at 188. Later that evening, at the direction of the police, the family accompanied E.D. to Nationwide Children's Hospital for further evaluation. *Id.* at 189.

### Forensic Interview

{¶5}    On the evening of October 19, 2023, Melissa Kapp, a social worker and certified forensic interviewer at Nationwide Children's Hospital, conducted a forensic

---

[1] Recognizing the heightened privacy interests of minors, we identify the parents and minors only by their initials in accord with Sup.R. 1(A), 44(C), 44(H) and 45(D); S.Ct.Prac.R. 3.12; R.C. 2303.901; Juv.R. 4.

[2] For clarity, the transcript of Art's jury trial will be referred to as "__T.__" signifying the volume and page number.

interview of E.D. 1T. at 261, 270, 280, 291; State's Exhibit 2-1. Kapp explained that such interviews are conducted with suspected child victims of sexual abuse to aid medical diagnosis and treatment. *Id.* at 270, 272, 285. Kapp reviewed E.D.'s statements, prepared a report including relevant medical records (State's Exhibits 1 and 1-2), and recorded the interview, which was played for the jury over Art's objection. 1T. at 283, 294; State's Exhibit 2-1.

{¶6}    During the interview with Kapp, E.D. disclosed that Art lived in the home with her and her mother and that, in the past, he had struck her on the bottom and mouth with his hand. 1T. at 295. Although initially reluctant to discuss the most recent incident, E.D. identified Art as the assailant. *Id.* at 296. Kapp testified that E.D. disclosed "[Art] came into her room last night…he put either his hand or his no-no [penis] on her bug [vagina] on top of her clothes." *Id.* at 297. While E.D. did not see Art's penis, she reported feeling something round and disclosed that he also touched her buttocks beneath her underwear. *Id.* E.D. additionally stated that she believed Art filmed the incident because she saw his phone during the assault. *Id.*

### *Physical Exam*

{¶7}    Jessica Newland, a Pediatric Sexual Assault Nurse Examiner ("PSANE"), conducted the medical examination of E.D. and collected biological evidence. 2T. at 329. She reviewed the forensic interview to guide her assessment and collected oral, vaginal, and anal swabs, as well as a DNA reference standard from E.D. 2T. at 337-338; State's Exhibits 5, 6, 12, 13. Newland was informed that Art was the alleged assailant. 2T. at 341.

{¶8}    During the examination, E.D. denied any oral, vaginal, or anal penetration and denied that Art ejaculated. 2T. at 343-344. She reported fondling over and under her

clothing, including on her right buttock, prompting Newland to obtain a swab from that area. *Id.* at 346, 355. Although Newland observed no physical trauma, she explained that the absence of injury does not preclude sexual contact, particularly in cases involving non-penetrative fondling. *Id.* at 359.

### Testimony of M.K. – E.D.'s Mother

{¶9}  M.K., the mother of the minor victim E.D., testified that she first met Art in 2019. 1T. at 222. Although the couple ended their relationship in November 2022, they reconciled in July 2023, at which point Art moved into the apartment shared by M.K. and E.D. *Id.* at 223.

{¶10} M.K. further testified about Art's family circumstances. She testified that Art's brother is deceased, and that Art has two sons who reside in Coshocton, Ohio. 1T. at 226-227. According to M.K., neither of Art's sons had ever spent the night at her apartment. *Id.* at 227. She testified that she last saw Art's father sometime between the years of 2021 and 2022. *Id.*

{¶11} Addressing E.D.'s background, M.K. testified that E.D. has exhibited behavioral challenges and may suffer from Attention Deficit/Hyperactivity Disorder ("ADHD"). 1T. at 257. M.K. recalled that in the past E.D. claimed to have seen pornography on Art's phone; however, no evidence was ever found to corroborate that allegation. *Id.* at 253, 260.

### Police Investigation of Art

{¶12} Detective Bryan Ruff of the Zanesville Police Department testified that he contacted Art concerning the allegations. 2T. at 378. Art voluntarily came to the police

department. *Id.* at 378-379. Detective Ruff testified that an examination of Art's cell phone revealed no pictures of E.D. or pornography of any kind. *Id.* at 383; State's Exhibit 19.

{¶13} Detective Ruff testified that Art voluntarily consented to give a DNA sample to the police. 2T. at 380; State's Exhibit 34. The DNA sample obtained from Art served as the reference for comparison with the evidence collected from E.D. 2T. at 379, 380; State's Exhibits 14, 34.

### *DNA Analysis*

{¶14} The State presented forensic DNA evidence through Amy Wanken and Logan Schepeler, scientists with the Ohio Bureau of Criminal Investigation ("BCI"). 2T at 388-389, 423. Wanken testified that she conducted DNA testing on the evidence and prepared two reports summarizing her findings. *Id.* at 395. She explained that no DNA analysis was performed on the oral or anal swabs and that the vaginal swab revealed no DNA profile other than E.D.'s own. 2T. at 404.

{¶15} Schepeler, a BCI forensic DNA scientist, explained the additional testing performed. 2T. at 423. Schepeler distinguished between two complementary types of DNA testing. He explained that Short Tandem Repeat ("STR") testing identifies both male and female DNA in a sample and can generate a complete DNA profile capable of being attributed to a specific individual. *Id.* at 426, 429-430.

{¶16} Schepeler further testified that Y-chromosome STR ("YSTR") testing focuses exclusively on the Y chromosome, which is passed unchanged along the paternal line. Because all paternal male relatives share an identical Y chromosome, YSTR analysis cannot pinpoint a single individual. Instead, a YSTR profile may originate from

the suspect or any male relative within the same paternal lineage, such as a father, brother, or son. 2T. at 430-431.

{¶17} Crucially, YSTR testing of the swab collected from E.D.'s right buttock produced a profile consistent with Art and his paternal male relatives. 2T. at 438-439, 441; State's Exhibit 32. This evidence directly linked biological material recovered from E.D. to Art's paternal lineage.

{¶18} The defense rested without presenting evidence.

### *Verdict and Sentence*

{¶19} The jury found Art guilty of two counts of gross sexual imposition. Sentencing was deferred pending the completion of a pre-sentence investigation report. ("PSI").

{¶20} On April 29, 2025, the trial court conducted a sentencing hearing. The court reviewed the PSI, heard from the state, the victim's mother, defense counsel and Art. The court sentenced Art to a sixty-month sentence on Count I and a sixty-month sentence on Count II. Sent. T. at 19. The court ordered the sentences to run concurrently. *Id.* Art was also sentenced to a mandatory 5-year period of post-release control and labeled a Tier II sexual offender.

### *Assignments of Error*

{¶21} Art raises two assignments of error,

{¶22} "I. ART'S CONVICTIONS ARE BASED UPON LEGALLY INSUFFICIENT EVIDENCE AND AGAINST THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

{¶23} "II. THE TRIAL COURT ERRED WHEN IT CHOSE TO ENHANCE ART'S SENTENCE BASED UPON HIS MAINTAINING HIS INNOCENCE THROUGHOUT THE PENDENCY OF THE CASE."

I.

{¶24} Art argues that his convictions are unsupported by sufficient evidence, and further that his convictions are against the manifest weight of the evidence. We disagree.

{¶25} Specifically, he contends that the State failed to call E.D. as a witness, E.D. has a history of false allegations, that the DNA test results do not definitively show the sample came from Art, and his DNA could have been transferred to E.D. by sitting on a commonly used toilet seat or from a commonly used bath towel.

**Standard of Appellate Review – Sufficiency of the Evidence**

{¶26} The Sixth Amendment guarantees the right to trial by an impartial jury, and the Due Process Clause requires the State to prove every element of the charged offense beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 509-510 (1995); *Hurst v. Florida*, 577 U.S. 92 (2016). We review a challenge to the sufficiency of the evidence de novo because it raises a question of law. *State v. Walker*, 2016-Ohio-8295, ¶ 30; *State v. Jordan*, 2023-Ohio-3800, ¶ 13.

{¶27} In reviewing a sufficiency challenge, we examine the statutory elements of the offense in light of the evidence presented at trial. *State v. Richardson*, 2016-Ohio-8448, ¶ 13. Our inquiry does not involve assessing witness credibility or weighing conflicting testimony. *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997)*; *Walker* at ¶ 30. Rather, we ask whether, viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001), citing *Jenks*; see also *Walker* at ¶ 31; *State v. Pountney*, 2018-Ohio-22, ¶ 19.

{¶28} A conviction will not be reversed for insufficient evidence unless reasonable minds could reach only one conclusion—acquittal. *State v. Ketterer*, 2006-Ohio-5283, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997); *accord State v. Montgomery*, 2016-Ohio-5487, ¶ 74.

### Gross Sexual Imposition

{¶29} To sustain a conviction for gross sexual imposition under R.C. 2907.05(A)(4)/(C)(2), the State was required to prove beyond a reasonable doubt that Art:

(1) Had sexual contact with another.

(2) The other person is less than thirteen years of age, whether or not the offender knows the age of that person.

### Definition of Sexual Contact

{¶30} R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶31} Art first contends that because E.D. did not testify at trial, he was deprived of the opportunity to confront and cross-examine his accuser. We disagree.

### *Confrontation Clause*

{¶**32**} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be confronted with the witnesses against him. The primary purpose of this guarantee is to prevent the use of unchallenged testimony to secure a conviction—a safeguard that applies in both federal and state prosecutions. *Mattox v. United States*, 156 U.S. 237, 242 (1895); *Crawford v. Washington*, 541 U.S. 36, 42, 53-54 (2004); *see also State v. Davis*, 2024-Ohio-1504, ¶ 24 (5th Dist.). The right of confrontation includes the opportunity to have a witness physically appear in court, testify under oath, and be subject to cross-examination. *Maryland v. Craig*, 497 U.S. 836, 845-846 (1990).

{¶**33**} Here, however, E.D.'s statements were not presented through her live testimony but were admitted via her forensic interview and the testimony of the interviewer, Melissa Kapp. This raises the question of whether those statements were admissible despite the absence of direct confrontation.

### *Hearsay*

{¶**34**} Ordinarily, such statements would be inadmissible as hearsay—an out-of-court statement offered for the truth of the matter asserted. Evid.R. 801(C). The exclusion of hearsay protects the integrity of trials by ensuring that only testimony subject to the safeguards of in-court proceedings—such as an oath, observation of the witness's demeanor, and cross-examination—can be considered by the factfinder. Evid.R. 802; *State v. Steffen*, 31 Ohio St.3d 111, 119 (1987). As the United States Supreme Court has explained, hearsay carries inherent risks because the declarant may be lying,

misremembering, or mistaken, and the listener may misunderstand. *Williamson v. United States*, 512 U.S. 594, 598 (1994).

{¶35}  Despite this general prohibition, Evid.R. 803(4) recognizes a longstanding exception for statements made for medical diagnosis or treatment. Such statements are inherently more reliable because medical professionals depend upon accurate patient histories for effective diagnosis and care. Thus, statements that meet the requirements of Evid.R. 803(4) may be admitted even if the declarant does not testify. *See White v. Illinois*, 502 U.S. 346, 356-357 (1992); *State v. Davis*, 2024-Ohio-1504, ¶ 31 (5th Dist.).

### *The Arnold Framework*

{¶36}  The Supreme Court of Ohio in *State v. Arnold*, 2010-Ohio-2742, addressed the precise issue presented here: the admissibility of statements made during interviews at child-advocacy centers in the face of a Confrontation Clause challenge. The Court recognized that these interviews serve dual purposes:

1. To gather forensic information for investigation and potential prosecution; and

2. To elicit information necessary for the medical diagnosis and treatment of the child victim.

*Arnold,* ¶ 33.

{¶37}  To balance these competing purposes, the Court required a careful, statement-by-statement analysis and held that statements describing investigative details - such as the layout of the room, the clothing involved, or the appearance of the accused - are primarily forensic and, therefore, inadmissible under Evid.R. 803(4). *Arnold*, 2010-Ohio-2742, ¶ 34. By contrast, statements describing the acts of abuse - such as touching,

penetration, or oral contact - are critical to medical evaluation and thus admissible under the medical-diagnosis exception. *Id.* at ¶¶ 37-38.

{¶38} Importantly, the Court stressed that each statement must be evaluated on its own terms, admitting those statements that further medical purposes while excluding those that do not. *Arnold*, 2010-Ohio-2742, ¶ 42. The mere fact that law enforcement was present during the interview, or later used the statements in prosecution, does not render medically necessary statements inadmissible. *Id.* at ¶ 43.

{¶39} The Court's reasoning in *Arnold* has been consistently followed. A child's statements to a social worker regarding sexual abuse remain admissible under Evid.R. 803(4) when made for medical diagnosis or treatment. *State v. Muttart*, 2007-Ohio-5267, ¶ 39; *State v. Keene*, 2023-Ohio-4761, ¶ 42 (5th Dist.). In *Arnold* itself, the child's statements were made to a social worker at the Center for Child and Family Advocacy at Nationwide Children's Hospital. *Arnold*, 2010-Ohio-2742, ¶ 1.

{¶40} In *Muttart*, the Court further identified factors for determining whether a child's statements were made for medical purposes, including whether the interviewer used leading questions, whether the child had a motive to fabricate, the child's understanding of the importance of telling the truth, the child's age, the consistency of the child's statements, and whether the interview followed established protocols. *Muttart*, 2007-Ohio-5267 at ¶ 49. Ultimately, the credibility of such statements remains subject to the adversarial process at trial. *Id.* at ¶ 50.

### Application to the Present Case

{¶41} The foregoing principles compel the conclusion that the trial court acted within its discretion in admitting much of E.D.'s forensic interview. Kapp, a social worker

and forensic interviewer with Nationwide Children's Hospital, testified that her role in the emergency department is to conduct forensic interviews of suspected child sexual-abuse victims to aid in medical diagnosis and treatment. 1T. at 270, 272, 285.

{¶42} E.D.'s statements that Art rubbed his penis on her vagina over her clothing and that he touched her buttocks under her clothing with his hand were plainly necessary for medical assessment and, therefore, admissible under Evid.R. 803(4). These statements were non-testimonial and did not violate Art's confrontation rights.

{¶43} Other portions of the interview - such as E.D.'s descriptions of Art hitting her on her bottom and on her mouth - did not serve a medical purpose under *Arnold* and, therefore, should not have been admitted.

{¶44} Nevertheless, even assuming that these latter statements were admitted in error, any such error was harmless. Under the three-part analysis in *State v. Harris*, 2015-Ohio-166, ¶ 37, an appellate court examines:

1. Whether the error prejudiced the defendant;

2. Whether it was harmless beyond a reasonable doubt; and

3. Whether, after excising the inadmissible evidence, the remaining

evidence independently establishes guilt beyond a reasonable doubt.

*See also State v. Arnold*, 2016-Ohio-1595, ¶ 50; *State v. Boaston*, 2020-Ohio-1061, ¶ 63.

{¶45} Applying that framework, we are convinced beyond a reasonable doubt that the inadmissible portions of E.D.'s interview did not influence the verdict. *See State v. Aeschilmann*, 2014-Ohio-4462, ¶¶ 95-96 (5th Dist.).

{¶46} Even without the challenged statements, the remaining evidence - when viewed in the light most favorable to the prosecution - amply supports the jury's finding

that Art engaged in sexual contact with E.D., knowing she was under thirteen, for the purpose of sexual arousal or gratification. Thus, the State carried its burden on each element of gross sexual imposition.

### Alleged Unreliability of E.D.'s Statements and DNA Evidence

{¶47} Art next asserts that E.D.'s allegations are unreliable. He argues that her credibility is undermined because she allegedly fabricated having seen pornography on his phone in the past and further claimed that he recorded the charged incident with his cell phone. Appellant's Brief at 3. Art also contends that the DNA evidence is inconclusive, theorizing that his DNA could have been transferred to E.D.'s right buttock through innocent contact - such as her sitting on a commonly used toilet seat or using a shared bath towel. *Id.*

### Standard of Review — Manifest Weight of the Evidence

{¶48} A manifest-weight challenge attacks the persuasive value of the evidence rather than its legal sufficiency. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. As the Supreme Court of Ohio explained, the inquiry focuses on "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997)*, superseded by constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997); State v. Martin*, 2022-Ohio-4175, ¶ 26.

{¶49} When reviewing a claim that a conviction is against the manifest weight of the evidence, the appellate court must determine whether the jury clearly lost its way in resolving conflicts in the evidence, creating a manifest miscarriage of justice - even where

the evidence is legally sufficient. *Thompkins* at 387; *State v. Issa*, 93 Ohio St.3d 49, 67 (2001).

{¶50} This review is necessarily deferential to the jury's findings. Juries occupy the unique position of observing the witnesses' demeanor, gestures, tone, and other nonverbal cues that cannot be fully captured in the record but often prove decisive in evaluating credibility. *Eastley* at ¶ 21; *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶51} The Supreme Court of Ohio has instructed appellate courts to review the entire record, weigh the evidence and reasonable inferences, assess witness credibility, and determine whether, in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. In performing this review, the appellate court acts as a "thirteenth juror" and may overturn a verdict if it disagrees with the trier of fact's conclusion. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983); *State v. Sheppard*, 2025-Ohio-2747, ¶ 24 (5th Dist.).

{¶52} Nevertheless, a conviction should be reversed on manifest-weight grounds only in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, at 387. The Ohio Constitution further requires that all three judges on the appellate panel must concur in such a reversal. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4, citing *Thompkins*, syllabus ¶ 4.

### Credibility Determinations and Circumstantial Evidence

{¶53} It is well settled that the jury, as the trier of fact, is charged with evaluating the evidence, determining witness credibility, and resolving conflicts in testimony. The

jury may consider conflicting evidence in determining credibility and the persuasiveness of the account of a witness by either discounting or otherwise resolving the discrepancies. *State v. Taylor*, 2015-Ohio-2490, ¶ 34 (10th Dist.), citing *Midstate Educators Credit Union, Inc. v. Werner*, 2008-Ohio-641, ¶ 28 (10th Dist.); *State v. Ashcraft,* 2023-Ohio-2378, ¶ 25 (5th Dist.).

{¶54} Inconsistencies in testimony alone do not render a conviction against the manifest weight of the evidence. *State v. Craig*, 1999 WL 29752 (10th Dist. Mar. 23, 2000), citing *State v. Nivens*, 1996 WL 284714 (10th Dist. May 28, 1996). "'The finder of fact can accept all, part or none of the testimony offered by a witness, whether it is expert opinion or eyewitness fact, and whether it is merely evidential or tends to prove the ultimate fact.'" *State v. Petty*, 2017-Ohio-1062, ¶ 63 (10th Dist.), quoting *State v. Mullins*, 2016-Ohio-8347, ¶ 39 (10th Dist.); *see also State v. Davis*, 2024-Ohio-1504, ¶ 60 (5th Dist.); *State v. Brunner,* 2017-Ohio-2618, ¶ 22 (5th Dist.).

{¶55} In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 2002-Ohio-1152, ¶ 13 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999); *State v. Snider,* 2012-Ohio-2183, ¶ 24 (5th Dist.); *Davis,* 2024-Ohio-1504, ¶ 61.

{¶56} Further, the State's reliance on circumstantial evidence does not weaken its case. The Supreme Court of Ohio has long held that circumstantial evidence carries the same probative force as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), paragraph one of the syllabus, *superseded on other grounds by constitutional amendment as recognized in State v. Smith, 80 Ohio St.3d 89, 102 n.4 (1997).*

***Application to the Present Case***

{¶57} In this case, the jury had the benefit of watching E.D.'s forensic interview in real time, allowing jurors to observe her demeanor, tone, and responsiveness firsthand. They could also assess the interviewer's conduct, including any potential bias or influence in the questioning. The jury was therefore uniquely positioned to evaluate the reliability of E.D.'s disclosures.

{¶58} The defense's theory that the DNA evidence was the product of incidental transfer from household items was presented to the jury. The jurors, acting within their role as the sole judges of credibility, were free to weigh that explanation against the totality of the evidence, including the testimony of expert witnesses, and to reject it if they found it unconvincing.

{¶59} Having independently reviewed the entire record, weighed the evidence and reasonable inferences, and considered the credibility of the witnesses as a "thirteenth juror," we find no compelling indication that the jury lost its way or created a manifest miscarriage of justice.

{¶60} Art's first assignment of error is overruled.

II.

{¶61} Art argues in his second assignment of error that the trial court imposed the maximum sentence of sixty months on each count of gross sexual imposition because he maintained his innocence and declined to express remorse at sentencing. Art points to the following statement of the trial judge made during the sentencing hearing,

> And I understand apparently you're maintaining your innocence here
> and that's fine, but along with that goes you show absolutely no remorse

whatsoever, zero as far as I can tell. So that leads me to believe there would be recidivism.

Sent. T. at 18.

### Standard of Appellate Review – Maximum Sentences

{¶62} Under R.C. 2953.08(A)(1), a defendant may appeal a maximum sentence as of right. Pursuant to R.C. 2953.08(F), we review the entire record, including oral and written statements, and the presentence investigation report. *See State v. Jones*, 2020-Ohio-6729, ¶ 36; *State v. Howell*, 2015-Ohio-4049, ¶ 31 (5th Dist.).

{¶63} An appellate court may modify or vacate a sentence if it clearly and convincingly finds that the record does not support the trial court's findings under certain statutory provisions, or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2); *State v. Bonnell*, 2014-Ohio-3177, ¶ 28. A sentence is "contrary to law" if it violates a statute. *Jones* at ¶ 34. "Clear and convincing evidence" is that which produces a firm belief or conviction. *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶64} An appellate court may not modify a sentence simply because it disagrees with the trial court's weighing of R.C. 2929.11 and R.C. 2929.12 factors. *Jones* at ¶ 39. However, if a sentence is based on factors extraneous to those statutes, it is contrary to law and reviewable. *State v. Bryant*, 2022-Ohio-1878, ¶ 22.

### *Purposes and Principles of Felony Sentencing - R.C. 2929.11*

{¶65} R.C. 2929.11(A) provides that felony sentences must be reasonably calculated to achieve the two overriding purposes of felony sentencing: (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions the court determines will accomplish those purposes. In doing so,

the trial court must consider the need to incapacitate the offender, deter future crime by the offender and others, rehabilitate the offender, and provide restitution to the victim, the public, or both.

{¶66} In addition, R.C. 2929.11(B) requires that a sentence be commensurate with, and not demeaning the seriousness of, the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.

### *Seriousness and Recidivism – R.C. 2929.12*

{¶67} R.C. 2929.12 provides guidance regarding the seriousness of the offense and the likelihood of recidivism. Subsections (B) and (C) list factors indicating whether the offender's conduct is more or less serious than conduct normally constituting the offense. These factors include: the victim's age; the physical, psychological, or economic harm to the victim; whether the offender's relationship with the victim facilitated the offense; the offender's criminal record; whether the offender was under court sanction at the time; expressions of remorse; and any other relevant factors.

{¶68} Subsections (D) and (E) address factors that indicate whether the offender is likely—or not likely—to commit future crimes.

### *Application to the Present Case*

{¶69} Art contends that the sentence is contrary to law because the trial court improperly equated his continued claim of innocence with a lack of remorse. In support of this claim, Art relies on the Supreme Court of Ohio's decision in *State v. Brunson*, 2022-Ohio-4299.

{¶70} In *Brunson*, the Court explained that "when a defendant has maintained his or her innocence by pleading not guilty and has taken the case to trial, the trial court errs when it considers the defendant's silence to be a demonstration of that defendant's lack of remorse for purposes of sentencing under R.C. 2929.12(D)(5)." *Id.* at ¶ 83. The Court nevertheless concluded that the error was not prejudicial in that case because the defendant failed to establish that his sentence would have been different absent the improper consideration of silence. *Id.* at ¶¶ 84-86.

{¶71} The record before us reflects that the trial court did not rely solely on Art's silence or his refusal to express remorse. Rather, the court considered the presentence investigation report, the statements of the prosecutor, the statements of the minor victim's mother, and the arguments of defense counsel. The trial court expressly noted several statutory sentencing factors, including the victim's young age, the psychological harm inflicted on the victim, and the fact that Art occupied a position of trust with the victim and her mother. Sent. T. at 17. In assessing Art's likelihood of recidivism, the court also referenced his prior conviction for a second-degree felony. *Id.* at 18. Additionally, the trial judge determined that each count of the indictment represented a separate act of gross sexual imposition. *Id.* at 19.

{¶72} These considerations demonstrate that the trial court's sentencing decision rested on proper statutory factors and not merely on Art's refusal to admit guilt. The imposed sentence of sixty months on each count falls squarely within the statutory range authorized by R.C. 2929.14. Moreover, Art has not shown that the outcome would have been different had the trial court disregarded any inference of lack of remorse.

{¶73}   Accordingly, we conclude that the trial court's sentence was lawful, and we find no basis to disturb the judgment on this ground.

{¶74}   Art's second assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Muskingum County Court of Common Pleas is affirmed.  Costs to Appellant.


By: Popham, J.

Hoffman, P.J. and

Montgomery, J., concur